IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH K., <br><br> Claimant, <br><br> v. <br><br> MARTIN O'MALLEY, <br> Commissioner of Social Security, <br><br> Respondent. | No. 21 C 6782 <br><br> Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

Joseph K.[1] ("Claimant") appeals the final decision of Respondent Martin O'Malley,[2] Commissioner of the Social Security Administration ("Commissioner"), denying his application for disability insurance benefits. For the reasons set forth below, Claimant's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 16] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 19] is granted. This decision of the Commissioner is affirmed.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## BACKGROUND

Claimant filed an application for disability insurance benefits on August 23, 2019, alleging a disability beginning on April 19, 2019. (R.41). His claim was denied initially and on reconsideration, and Claimant then requested a hearing. (R.41). Administrative Law Judge ("ALJ") Deborah M. Giesen held a telephone hearing on January 11, 2021, and issued a decision on March 29, 2021, finding Claimant was not disabled. (R.41-56). The Appeals Council declined to review the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (R.1-7). This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe

a five-part sequential test for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform any past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one in this case, the ALJ found Claimant has not engaged in substantial gainful activity since April 19, 2019, the alleged disability onset date. (R.43). At step two, the ALJ found Claimant has the following severe impairments: degenerative disc disease of the thoracic and lumbar spine; status post lumbar surgery; diabetes mellitus; and neuropathy. (R.44). At step three, the ALJ found Claimant does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (R.47). The ALJ then determined Claimant has the RFC "to perform light work as defined in 20 CFR 404.1567(b) except he can frequently climb ramps and stairs; can frequently kneel; can occasionally stoop, crouch and crawl; can have no concentrated exposure to extremes of heat or cold and no concentrated exposures to vibrations (tools, work surfaces)." (R.47). At step four, the ALJ found Claimant is capable of performing past relevant work as an engraving

press operator because "[t]his work does not require performance of work-related activities precluded by the claimant's residual functional capacity." (R.54). In addition to past relevant work, the ALJ found that "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform." (R.54). Therefore, the ALJ determined Claimant is not disabled pursuant to the Social Security Act from April 19, 2019, to March 29, 2021, the date of the ALJ's decision. (R.55-56).

Claimant asserts three arguments challenging the ALJ's decision, including: (1) the ALJ erred in assessing the opinion of his treating physician, Catherine Baker, M.D.; (2) the ALJ erred in her assessment of the opinions of the state agency consultants; and (3) the ALJ failed to set forth a legally sufficient symptom analysis. The Court will address each argument below.

### I. The ALJ's Analysis of the Medical Opinion Evidence is Supported by Substantial Evidence

In his first argument, Claimant argues that the ALJ did not properly evaluate the opinion of his treating physician, Dr. Catherine Baker, M.D. Claimant's Brief [ECF No. 16], at 5-10. When evaluating claims filed on or after March 27, 2017, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a) (2017). While the ALJ must articulate her consideration of all medical opinions, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized

procedures that she must follow when considering opinions from treating sources. 20 C.F.R. § 404.1520c(b) (2017). Rather, the ALJ should focus on the persuasiveness of any medical opinion and any prior administrative medical findings using the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(a)-(c) (2017). The ALJ must explain how she considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2) (2017). The ALJ may, but is not required to, explain how she considered the other remaining factors. 20 C.F.R. § 404.1520c(b)(3) (2017).

In this case, the ALJ found the opinion of Claimant's treating physician Dr. Baker to be "unpersuasive" and provided multiple reasons explaining why she was not persuaded by Dr. Baker's opinion. (R.53). First, the ALJ found that Dr. Baker's opinion was "inconsistent with [her] own treatment records." (R.53). The ALJ then cited to multiple records that contradicted or were inconsistent with Dr. Baker's opinion. (R.53). Specifically, the ALJ found:

> Dr. Baker noted some decreased strength on occasion at 4+/5, which is minimal. She did not document any instability of the spine or any joint. The record shows evidence of edema on 1 or 2 occasions, which were attributed to excessive sodium in his diet. However, there is no evidence that Dr. Baker ever recommended that the claimant needed to elevate his legs (10F; 13F; 16F). Dr. Baker's examinations of the lumbar spine do not support her opinion that the claimant could not sit for two hours or stand/walk for four hours (10F; 13F; 16F). Nor do her exams show impairment of the upper extremities that would explain her

5

opinion regarding his ability to reach. Her exams show no limitations in the claimant's upper extremities.

(R.53). Second, the ALJ found that Dr. Baker's opinion is "inconsistent with the rest of the objective evidence.' (R.53). Specifically, the ALJ explained:

> Dr. Gutta's exams showed some neuropathy of the lower extremities but 5/5 strength, and no atrophy, muscle weakness, significant sensory loss, or reflex loss was noted on exams performed by Dr. Khan. Indeed, the exams by this neurosurgeon repeatedly showed essentially unremarkable findings (9F; 10F; 13F; 17F).

(R.53). Third, the ALJ found that Dr. Baker's opinion was "also inconsistent with the course of treatment." (R.53). More specifically, the ALJ noted that "while physical therapy and epidural steroid injections were recommended, the claimant never follow[ed] up with either and has been treated with only oral medications, including Lyrica and narcotic pain medication." (R.53). Lastly, the ALJ found that Dr. Baker's opinion "is inconsistent with the claimant's own reported activity…, including 'a lot of lifting,' replacing a water heater, lifting a case of water." (R.53).

The ALJ provided four independent reasons explaining why she was not persuaded by Dr. Baker's opinion, and none of Claimant's arguments challenging the ALJ's assessment of Dr. Baker's opinion are persuasive. Claimant argues the ALJ erred in concluding that Dr. Baker's normal findings in the treatment records were more probative than the abnormal ones and that her opinion was not consistent with or supported by the normal findings. These arguments ignore the ALJ's explanation that the normal findings were more common than the abnormal ones and also that it is the ALJ's role to weigh

6

conflicting evidence and decide—which is precisely what she did here. (R.53); *Esther V. v. Saul*, 2021 WL 1121123, at *7 (N.D. Ill. Mar. 24, 2021) ("As in all Social Security disability cases, 'there are positive signs and negative signs regarding plaintiff's capabilities in [various] area[s]; these were conflicts that the ALJ had to resolve.'").

In the Court's view, the ALJ discussed and reasonably weighed the treatment Claimant received for his allegedly disabling symptoms, and it was not error for the ALJ to consider the conservative nature of that treatment. "The Seventh Circuit has held that it is reasonable for an ALJ to consider a claimant's conservative treatment." *Frank J. v. Saul*, 2020 WL 6447928, at *9 (N.D. Ill. Nov. 3, 2020). "Not all treatments support finding a claimant's pain allegations credible; to the contrary, an ALJ may discount a claimant's allegations based on his reliance on 'routine and conservative' treatment." *Vincent A. v. Berryhill*, 2019 WL 2085104, at *12 (N.D. Ill. May 13, 2019); *see also Adam B. v. Saul*, 2020 WL 1675462, at *7 (N.D. Ill. Apr. 6, 2020) (noting ALJ may consider effectiveness of conservative treatment); *Frank B. v. Saul*, 2019 WL 6307651, at *15 (N.D. Ill. Nov. 25, 2019) (holding that the ALJ properly discounted the claimant's allegations when the record contained significant periods when claimant did not have any treatment and took no medications). Here, the ALJ noted that Claimant's back pain had been managed with pain medication and that he had not followed up on

7

recommendations for epidural steroid injections or physical therapy and did not provide any explanation for not attending physical therapy. (R.52).

The law is clear. "[I]t is not the court's role to reweigh the evidence or substitute its judgment for the ALJ's with respect to how the conflicting medical opinions should be balanced." *Donald L. v. Saul*, 2019 WL 3318165, at *5 (N.D. Ill. Jul. 24, 2019); *see also Melissa G. v. Saul*, 2019 WL 4392995, at *4 (N.D. Ill. Sept. 13, 2019) ("Plaintiff essentially invites the Court to revisit the… evidence, ignore the weight the ALJ gave to the substantial evidence she relied on when formulating her opinion, and reweigh the evidence in Plaintiff's favor. The Court declines the invitation, as it is required to do."). Here, Claimant's arguments can be reduced to one essential point—Claimant disagrees with the ALJ's assessment of Dr. Baker's opinion and argues the ALJ should have weighed the evidence differently than she did. However, this fundamentally misunderstands the Court's role here, and the Court cannot, and will not, reweigh the evidence or substitute its judgment for the ALJ's with respect to how to assess the medical opinions or how to balance conflicting medical opinions. *Anthony G. v. Saul*, 2020 WL 439964, at *8 (N.D. Ill. Jan. 28, 2020). In the Court's view, the ALJ provides a reasonable explanation of her evaluation of Dr. Baker's opinion, and the Court will not second guess her evaluation or re-weigh the evidence. Therefore, remand is not required.

Next, Claimant contends that the ALJ improperly relied on the prior administrative findings from the state agency consultants, Dr. James Hinchen

8

and Dr. Hilda Martin, because he submitted additional medical evidence, including an updated MRI, after the state agency physicians completed their administrative review. Claimant's Brief [ECF No.16], at 10-12. However, it "is common for there to be a lag between the state agency physicians' reviews and the ALJ's decision, so the fact that new medical records came in after the state agency physicians conducted their reviews, is not, by itself, problematic." *Shelia M. v. Saul*, 2021 WL 1784775, at *6 (N.D. Ill. May 5, 2021).

Here, the ALJ found the opinions of Dr. James Hinchen and Dr. Hilda Martin persuasive and specifically explained:

> The State agency consultants opined the claimant had non-severe mental impairments and opined that in view of his severe physical impairments, the claimant could perform light work with occasional ladders, ropes and scaffolds; occasionally stopping and crawling; frequent climbing of ramps and stairs; frequent kneeling and should avoid concentrated exposure to extreme heat and extreme cold (1A; 3A). The State agency consultant at reconsideration also opined the claimant should avoid concentrated exposure to vibrations (3A). These opinions are persuasive. The State agency opinions are based upon a thorough review of the available medical records and a comprehensive understanding of agency rules and regulations. The undersigned also finds these opinions internally consistent and well supported by a reasonable explanation. These opinions are also consistent with evidence at the hearing level showing ongoing conservative treatment.

(R.52-52). Although Claimant points to the fact that he had a more recent MRI that showed disc protrusion, the ALJ noted that the test was performed and specifically discussed it in her decision, noting that Claimant's examination findings after the MRI continued to show normal range of motion and strength with no tenderness, swelling, or deformity and a normal sensory and motor

9

function exam, which did not suggest that Claimant's functional abilities had worsened. (R.51). The Court does not find any error in the ALJ's explanation.

Claimant also suggests that the ALJ should have retained a medical expert to review the new evidence, but an ALJ's decision to retain a medical expert is "discretionary," and the ALJ does not have an obligation to call one, particularly when subsequent examination findings were normal or unchanged as they were in this case. *Jesus P. v. Saul*, 2020 WL 3268515, at *10 (N.D. Ill. Jun. 17, 2020) citing Gebauer v. Saul, 801 F. App'x 404, 408 (7th Cir. 2020). "The task of assessing a claimant's RFC is reserved to the Commissioner instead of to a medical expert." *Lisa S. v. Saul*, 2020 WL 5297028, at *15 (N.D. Ill. Sept. 4, 2020). The Court cannot say the ALJ's assessment of the opinions of the state agency physicians was not supported by substantial evidence. Therefore, remand is not required on this issue.

## II. The ALJ's Evaluation of Claimant's Subjective Symptoms Is Legally Sufficient

In his last argument, Claimant contends that the ALJ's analysis of his subjective symptoms is legally insufficient. "Social Security Regulation 16-3p outlines a two-step process for an ALJ to follow when evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his or her symptoms. Next, the ALJ must evaluate the intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to

10

do basic work activities." *Maria S. v. Kijakazi*, 2023 WL 7130376, at *7 (N.D. Ill. Oct. 30, 2023) (internal quotation marks and citations omitted). The ALJ "must explain her subjective symptom evaluation in such a way that allows the Court to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Charles B. v. Saul*, 2020 WL 6134986, at *6 (N.D. Ill. Oct. 19, 2020) (internal quotation marks and brackets omitted). And the standard is clear that "the court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is 'patently wrong.'" *Id.* (quoting *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)).

In the Court's view, the ALJ's evaluation of Claimant's subjective symptoms and complaints in this case is not patently wrong. The ALJ specifically concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. The objective medical evidence does not show that the claimant's impairments would prevent him from performing a limited range of light work activity. Significantly, the claimant has a history of back surgery but returned to work at a substantial gainful activity level and only stopped working when he was laid off. He then applied for and received unemployment compensation benefits. The exams documented in the file show the claimant has been noted on most occasions, especially when seen by the specialist, Dr. Khan, versus his primary care provider, Dr. Baker, to have an essentially unremarkable exam. Contrary to his testimony that he has neck pain and numbness and tingling in the left arm, hand

11

>and fingertips and soreness in the right arm, there is no documentation of any evaluation or treatment for neck pain, or evaluation for the upper extremity symptoms he described at hearing. He has been treated generally for neuropathy felt by doctors to be secondary to either diabetes or his history of alcohol abuse. He described a remote history of a right elbow injury. However, he clearly worked at a medium job despite any such remote injury.

The ALJ permissibly considered the extent to which Claimant's complaints about pain and other alleged limitations were inconsistent with other medical evidence in the record. *See Tina S. v. Kijakazi*, 2022 WL 3700837, at *3 (N.D. Ill. Aug. 26, 2022). The ALJ gave valid reasons and provided sufficient explanation for not fully crediting Claimant's subjective symptom allegations. Later in her opinion, the ALJ further explained:

>In sum, the above residual functional capacity assessment is supported by the record as a whole in this case, which indicates that the claimant's limitations will not interfere with his ability to function independently, appropriately, effectively, and on a sustained basis within the residual functional capacity defined above. His complaints of back and neck pain and the diabetic peripheral neuropathy are accommodated with the limitation to light exertion. Further, to accommodate the neuropathy, I find he is limited to frequent climbing ramps and stairs and kneeling, and in regard to concentrated exposure to vibrating tools and work surfaces. His back pain due to degenerative disc disease is accommodated with the remaining postural limitations in the RFC finding, and to limitations on exposure to temperature extremes that could exacerbate back pain. The undersigned considered the claimant's allegations and found them neither consistent with nor well supported by the objective medical findings, the claimant's statements about his activities, his medication regimen, his doctor's observations, and the opinions of the State agency consultants.

(R.54). The Seventh Circuit has stated that it "would not reverse the credibility determination as long as the ALJ provided at least one reason to support the

finding." *Schrank v. Saul,* 843 F. App'x 786, 789 (7th Cir. 2021). Here, the ALJ has provided multiple reasons to support her findings in this case. This Court will not, and cannot under the law, second guess the ALJ's conclusion.

For these reasons, the Court is not persuaded by Claimant's final argument and finds that the ALJ's assessment of Claimant's subjective symptoms and complaints is legally sufficient and supported by the record in this case.

## CONCLUSION

For the reasons set forth above, Claimant's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 16] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 19] is granted. This decision of the Commissioner is affirmed.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 20, 2024